IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CLARENCE CHING and MARY MAXINE KAHAULELIO, | ) ) | CIV. NO. 14-00253 JMS-RLP |
| | ) | ORDER (1) REJECTING JULY 22, |
| Plaintiffs, | ) | 2014 FINDINGS AND |
| | ) | RECOMMENDATION TO DENY |
| vs. | ) | PLAINTIFFS' MOTION TO REMAND, |
| | ) | DOC. NO. 18; AND (2) GRANTING |
| WILLIAM J. AILA JR. in his official | ) | PLAINTIFFS' MOTION TO REMAND, |
| capacity as Chairperson of the Board | ) | DOC. NO. 6 |
| of Land and Natural Resources and | ) | |
| state historic preservation officer, | ) | |
| BOARD OF LAND OF NATURAL | ) | |
| RESOURCES, DEPARTMENT OF | ) | |
| LAND AND NATURAL | ) | |
| RESOURCES, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER (1) REJECTING JULY 22, 2014 FINDINGS AND
RECOMMENDATION TO DENY PLAINTIFFS' MOTION TO REMAND,
DOC. NO. 18; AND (2) GRANTING PLAINTIFFS' MOTION TO REMAND,
DOC. NO. 6**

## I. INTRODUCTION

On April 28, 2014, Plaintiffs Clarence Ching and Mary Maxine

Kahaulelio (collectively, "Plaintiffs") filed this action in the First Circuit Court of

the State of Hawaii against Defendants William J. Aila Jr., in his official capacity

as Chairperson of the Board of Land and Natural Resources ("BLNR") and state

historic preservation officer, the BLNR, and the Department of Land and Natural Resources ("DLNR") (collectively, "Defendants"), asserting a claim for breach of trust duties for their alleged failure to ensure compliance with the terms of a lease of ceded lands at the Pohakuloa Training Area ("PTA") by the lessee, the United States. On May 29, 2014, Defendants removed the action to this court, asserting federal jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1346. Doc. No. 1, Notice of Removal ¶¶ 3-4. Plaintiffs' Motion to Remand followed.

On July 22, 2014, Magistrate Judge Richard L. Puglisi entered a Findings and Recommendation to Deny Plaintiffs' Motion to Remand ("the July 22 F&R"). Magistrate Judge Puglisi rejected some of Defendants' bases for jurisdiction, but determined that this court has jurisdiction because the United States and Hawaii share concurrent jurisdiction over the PTA, and the United States has a substantial federal interest in the action. Plaintiffs now object, arguing that the United States does not have a significant legal interest in Plaintiffs' breach of trust claim that would support subject matter jurisdiction. Based upon a de novo review, the court REJECTS the July 22 F&R and GRANTS Plaintiffs' Motion to Remand.

///

///

## II. BACKGROUND

### A.    Factual Background

As alleged in the Complaint, on July 2, 1963, the DLNR entered into an agreement for the United States to lease three parcels of land at Pohakuloa for military purposes for a sixty-five year term ending on August 16, 2029 (the "Lease").  Doc. No. 1-2, Compl. ¶¶ 32-33.  The Lease requires the United States to "make every reasonable effort to . . . remove or deactivate all live or blank ammunition upon completion of a training exercise or prior to entry by the said public, whichever is sooner," and also to "remove or bury all trash, garbage or other waste materials."  *Id.* ¶¶ 34-35.

Despite these terms, the Complaint alleges that Defendants are aware that unexploded ordnance ("UXO") and munitions and explosives of concern ("MEC") litter the PTA, with one DLNR staff member stating that the "PTA should sweep the lands North of the saddle road for UXO and remove any UXO found at their expense to make the area safe for the public."  *Id.* ¶ 37.  Further, a Final Environmental Impact Statement for Construction and Operation of an Infantry Platoon Battle Course at PTA states that "MEC/UXO is known to exist in the impact area," and that "[p]ast and current activities at PTA have resulted in contamination of soil by explosives and other chemicals."  *Id.* ¶¶ 39, 41.

In January 2014, Plaintiffs requested that Defendants provide all government records showing DLNR's or BLNR's efforts at ensuring compliance with the terms of the Lease. *Id.* ¶ 43. In response, Defendants asserted that there are no government records responsive to the request. *Id.* ¶ 44. As a result, Plaintiffs assert that Defendants have taken no concrete steps to investigate, monitor, or ensure compliance with the terms of the lease. *Id.* ¶ 46.

The lands of the PTA are ceded lands, *id.* ¶ 47,[1] and the Complaint alleges that Defendants have breached their trust responsibilities to protect, care for, and maintain the PTA by failing to investigate the United States' compliance with the Lease terms. *Id.* ¶¶ 49-55. Plaintiffs assert that they are not alleging that the United States violated the Lease, but rather that "Defendants have reason to

---

[1] As *Rice v. Cayetano*, 528 U.S. 495, 505 (2000), explains:

> In 1898, President McKinley signed a Joint Resolution, sometimes called the Newlands Resolution, to annex the Hawaiian Islands as territory of the United States. 30 Stat. 750. According to the Joint Resolution, the Republic of Hawaii ceded all former Crown, government, and public lands to the United States. *Ibid.* The resolution further provided that revenues from the public lands were to be "used solely for the benefit of the inhabitants of the Hawaiian Islands for educational and other public purposes." *Ibid.* Two years later the Hawaiian Organic Act established the Territory of Hawaii, asserted United States control over the ceded lands, and put those lands "in the possession, use, and control of the government of the Territory of Hawaii . . . until otherwise provided for by Congress." Act of Apr. 30, 1900, ch. 339, § 91, 31 Stat. 159.

believe that the lease terms may have been violated and have a trust duty to investigate and take all necessary steps to ensure compliance with lease terms." *Id.* ¶ 1. Plaintiffs seek a declaration that Defendants breached their trust obligations, an order that Defendants fulfill their trust duties as to the PTA, and an injunction enjoining Defendants from negotiating an extension to the lease or entering into a new lease with the United States until Defendants ensure that the terms of the existing lease have been fulfilled.

## B.     Procedural Background

On April 28, 2014, Plaintiffs filed this action against Defendants in the First Circuit Court of the State of Hawaii, asserting a single claim for breach of trust. On May 29, 2014, Defendants removed the action to this court.

On June 12, 2014, Plaintiffs filed their Motion to Remand. Doc. No. 6. Defendants filed an Amended Opposition on June 26, 2014, Doc. No. 13, and Plaintiffs filed a Reply on July 10, 2014. Doc. No. 14. The July 22 F&R followed. Doc. No. 18.

On July 29, 2014, Plaintiffs filed an Objection, Doc. No. 19, and Defendants filed no Response. Pursuant to Local Rule 7.2(d), the court determines the Objection without a hearing.

# III.  STANDARD OF REVIEW

A motion to remand is considered to be a case-dispositive motion, requiring the issuance of a findings and recommendation if initially reviewed by a magistrate judge.  *See Keown v. Tudor Ins. Co.*, 621 F. Supp. 2d 1025, 1029 (D. Haw. 2008).  When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise.").

Under a de novo standard, this court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered."  *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006); *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988).  The district court need not hold a de novo hearing; however, it is the court's obligation to arrive at its own independent conclusion about those portions of the magistrate judge's findings or

recommendation to which a party objects.  *United States v. Remsing*, 874 F.2d 614, 616 (9th Cir. 1989).

## IV.  ANALYSIS

The Complaint asserts a single claim for breach of trust.  Although this claim on its face appears to be governed by state law, the July 22 F&R determined that removal was proper because the Lease at issue is for the PTA, which is a federal enclave over which federal courts have concurrent jurisdiction, and this action raises substantial federal interests, providing a compelling reason for the exercise of federal enclave jurisdiction.[2]  Doc. No. 18, July 22 F&R at 14-16.  Although Plaintiffs do not dispute the July 22 F&R's determination that concurrent jurisdiction exists over the PTA, they argue that this action does not raise substantial federal interests sufficient to support the court's exercise of

---

[2]  Before reaching this determination, the July 22 F&R rejected Defendants' additional arguments that removal is proper because the United States should have been named a Defendant and that this action arises under federal law.  Defendants did not object to these determinations, and the court need review only those portions of an F&R to which objections are made.  *See* 28 U.S.C. § 636(b)(1); *Raddatz*, 447 U.S. at 673.  Although Defendants' failure to object could be based on the fact that the July 22 F&R accepted Defendants' third argument for subject matter jurisdiction (and thus Defendants had no reason to appeal), Defendants also failed to file *any* Response to Plaintiffs' Objections.  Given Defendants' failure to voice any disagreement with the July 22 F&R, the court need review only those portions of the July 22 F&R to which objections were made.  And in any event, even upon a de novo review, the court agrees with the July 22 F&R to the extent it rejected that removal is proper because the United States should have been named a Defendant and that this action arises under federal law.  The court therefore adopts the July 22 F&R's reasoning on these two points.

7

jurisdiction. Based on different reasoning, the court finds that Defendants have failed to establish this court's subject matter jurisdiction.

## A. Standard for Removal Based on Federal Question Jurisdiction

"Removal and subject matter jurisdiction statutes are 'strictly construed,' and a 'defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability.'" *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, --- F.3d ----, 2014 WL 3765697, at *4 (9th Cir. Aug. 1, 2014) (quoting *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008)); *see also Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). Removal is only proper when the district court has original jurisdiction, which in this case requires that the removed claims "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.[3]

"For statutory purposes, a case can 'aris[e] under' federal law in two ways." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). The "vast bulk of suits that arise under federal law" are those where "federal law creates the cause of action asserted." *Id.* The second and "less frequently encountered" category of federal question jurisdiction cases are those asserting state law claims that "necessarily

---

[3] Defendants do not assert that diversity jurisdiction applies.

raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 314 (2005); *see also Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). *Gunn* clarifies that under this second category, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." 133 S. Ct. at 1065.

**B. Application**

The court first outlines the basis for concurrent jurisdiction over the PTA, and then, applying the federal question jurisdiction analysis, finds that Defendants have failed to establish that this concurrent jurisdiction is sufficient to invoke federal subject matter jurisdiction over Plaintiffs' breach of trust claim.

### 1. *Concurrent Enclave Jurisdiction over the PTA*

Both parties agree that the State of Hawaii and the United States have concurrent enclave jurisdiction over the PTA. *See* Doc. No. 12, Defs.' Opp'n to Mot. to Remand, at 8. As the July 22 F&R outlines in detail, the United States reserved enclave authority, as provided in the Enclave Clause of the U.S.

9

Constitution,[4] over certain lands under the 1959 Act to Provide for the Admission of the State of Hawaii into the Union ("Admission Act"), including land that was "immediately prior to the admission of said State [] controlled or owned by the United States and held for Defense or Coast Guard purposes." *See* Doc. No. 18, July 22 F&R at 9-10 (quoting Admission Act § 16, Pub. L. No. 86-3, 73 Stat. 11-12). The July 22 F&R further outlines that prior to Hawaii's admission, the PTA was both owned and/or controlled by the United States and used for military training purposes, making the PTA subject to federal enclave jurisdiction. Doc. No. 18, July 22 F&R at 10-11.

This federal enclave jurisdiction is concurrent with the State's jurisdiction -- § 16(b)(ii) of the Admission Act provides that the reservation of authority "shall not operate . . . to prevent [Hawaii] from exercising over or upon such land, concurrently with the United States, any jurisdiction whatsoever which it would have in the absence of such reservation of authority and which is consistent with the laws hereafter enacted by the Congress pursuant to such reservation of authority." *Id.* at 11 (citing Admission Act, § 16(b), Pub. L. No. 86-

---

[4] The Enclave Clause provides that "[t]he Congress shall have Power To . . . exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States . . . ." U.S. Const. Art. 1, § 8, cl. 17.

3, 73 Stat. 11-12)[5]; *see also Kalaka Nui, Inc. v. Actus Lend Lease, LLC*, 2009 WL

1227892, at *5 (D. Haw. May 5, 2009) ("The Admission Act clearly provides that

---

[5]  Section 16(b) of the Admission Act, in full, provides:

> Notwithstanding the admission of the State of Hawaii into the Union, authority is reserved in the United States, subject to the proviso hereinafter set forth, for the exercise by the Congress of the United States of the power of exclusive legislation, as provided by article I, section 8, clause 17, of the Constitution of the United States, in all cases whatsoever over such tracts or parcels of land as, immediately prior to the admission of said State, are controlled or owned by the United States and held for Defense or Coast Guard purposes, whether such lands were acquired by cession and transfer to the United States by the Republic of Hawaii and set aside by Act of Congress or by Executive order or proclamation of the President or the Governor of Hawaii for the use of the United States, or were acquired by the United States by purchase, condemnation, donation, exchange, or otherwise: *Provided*, (i) That the State of Hawaii shall always have the right to serve civil or criminal process within the said tracts or parcels of land in suits or prosecutions for or on account of rights acquired, obligations incurred, or crimes committed within the said State but outside of the said tracts or parcels of land; (ii) that the reservation of authority in the United States for the exercise by the Congress of the United States of the power of exclusive legislation over the lands aforesaid shall not operate to prevent such lands from being a part of the State of Hawaii, or to prevent the said State from exercising over or upon such lands, concurrently with the United States, any jurisdiction whatsoever which it would have in the absence of such reservation of authority and which is consistent with the laws hereafter enacted by the Congress pursuant to such reservation of authority; and (iii) that such power of exclusive legislation shall vest and remain in the United States only so long as the particular tract or parcel of land involved is controlled or owned by the United States and used for Defense or Coast Guard purposes: *Provided, however*, That the United States shall continue to have sole and exclusive jurisdiction over such military installations as have been heretofore or hereafter determined to be critical areas as delineated by the President of the United States and/or the Secretary of Defense.

Pub. L. No. 86-3, 73 Stat. 4, 11-12 (March 18, 1959).

Hawaii has concurrent jurisdiction over such military bases so long as state jurisdiction is consistent with post-Admission Act laws enacted by the United States Congress.").

Neither party objects to the July 22 F&R's analysis on this issue, and even upon a de novo review, the court agrees with it. The court therefore adopts the July 22 F&R's analysis to the extent it determined that the State and United States have concurrent enclave jurisdiction over the PTA.

**2.** ***Whether Concurrent Enclave Jurisdiction Over the PTA Establishes Subject Matter Jurisdiction***

The court must now determine whether this concurrent enclave jurisdiction over the PTA is sufficient to establish federal subject matter jurisdiction over Plaintiffs' state law breach of trust claim.[6] Absent this concurrent enclave jurisdiction, the court would have little trouble finding a lack of subject matter jurisdiction. Striping away the issue of concurrent enclave jurisdiction,

---

[6] Defendants do not argue that the Enclave Clause itself provides a basis for subject matter jurisdiction, with this action being a civil action "arising under the Constitution." *See* 28 U.S.C. § 1331. In any event, such argument would fail.

The Enclave Clause provides that "[t]he Congress shall have Power To . . . exercise exclusive Legislation" in enclave lands, U.S. Const. Art. 1, § 8, cl. 17, and this permissive language suggests that the laws governing an enclave are governed by Congressional action and do not arise out of Enclave Clause on its own. Further, the Supreme Court has explained that "the grant of 'exclusive' legislative power to Congress over enclaves that meet the requirements of [the Federal Enclave Clause] by its own weight, bars state regulation without specific congressional action." *Paul v. United States*, 371 U.S. 245, 263 (1963). Applied here, Congress has specially granted Hawaii broad concurrent enclave jurisdiction in § 16(b) of the Admission Act, thereby granting Hawaii the power to regulate enclave lands.

Plaintiffs are asserting a basic state-law breach of trust claim against Defendants for failing to monitor whether the United States complied with the terms of the Lease.  The United States is not a party to this action, the claim is a state-law claim, and the claim does not otherwise necessarily raise any federal issues.  Further, the July 22 F&R soundly (and correctly) rejected Defendant's argument that this claim somehow arises under federal law.[7]  Thus, the question is whether this concurrent enclave jurisdiction over the PTA transforms Plaintiff's breach of trust claim into one under federal law and/or otherwise provides the court with subject matter jurisdiction.

    "Whether federal enclave jurisdiction, a form of federal question jurisdiction, exists is a complex question, resting on such factors as whether the federal government exercises exclusive, concurrent or proprietarial jurisdiction over the property, when the property became a federal enclave and what the state law was at that time, whether that law is consistent with federal policy, and whether it has been altered by national legislation."  *Celli v. Shoell*, 40 F.3d 324,

_____

[7] Defendants argued to Magistrate Judge Puglisi that Plaintiffs' claim arises under federal law because if Defendants had brought a coercive action against the United States to enforce Defendants' rights under the Lease, such action could be brought in federal court.  *See* Doc. No. 18, July 22 F&R at 6.  The July 22 F&R correctly explained that Defendants misstated the test for federal jurisdiction over a declaratory action, which is whether there would be subject matter jurisdiction over a coercive action brought by the defendant against the plaintiff, not an action brought by the defendant against a third party.  *Id.* at 6-7.

328 (10th Cir. 1994) (citations omitted); *see also Kelly v. Lockheed Martin Servs. Grp.*, 25 F. Supp. 2d 1, 4 (D. P.R. 1998) (same).  This issue is further complicated by the fact that cases sometimes use the term "concurrent jurisdiction" without addressing the scope of the state's jurisdiction -- states often retain limited jurisdiction to perform certain acts on enclave lands (such as service of process), which differs from this case where Hawaii was granted broad concurrent jurisdiction over enclave lands.[8]  *See, e.g.*, *Cmty. Hous. P'ship v. Byrd*, 2013 WL 6087350, at *5-6 (N.D. Cal. Nov. 19, 2013) (distinguishing between the scope of concurrent jurisdiction granted to states on enclaves in different cases).  The Ninth Circuit has not addressed these complex issues in any detail -- the court could find no Ninth Circuit cases addressing subject matter jurisdiction where there is broad concurrent enclave jurisdiction, and the few cases raising enclave jurisdiction as a

---

[8]  Another confusion is all too common -- the term "jurisdiction" has "many, too many, meanings."  *City of Arlington, Tex. v. FCC*, 133 S. Ct. 1863, 1879 (2013).  For example, under the Enclave Clause, where the U.S. Congress is granted "power to . . . exercise exclusive legislation" over certain lands, "[e]xclusive legislation has been construed to mean exclusive 'jurisdiction' in the sense of exclusive sovereignty."  *Mater v. Holley*, 200 F.2d 123, 123 (5th Cir. 1952).  And some courts may use the term "concurrent jurisdiction" to refer to the fact that a state court has jurisdiction to hear a federal claim arising on enclave lands, even though such claim raises a federal question, which could be removed to federal court.  *See Akin v. Big Three Indus.*, 851 F. Supp. 819, 822 n.1 (E.D. Tex. 1994) ("Plaintiffs' argument that state courts have concurrent jurisdiction over transitory tort actions misses the point.  Whether the state court's jurisdiction is concurrent is irrelevant to the issue whether a federal question is presented.  Many federal questions may be heard concurrently in a federal system.").  In this Order, the court uses the term "concurrent jurisdiction" and/or "concurrent enclave jurisdiction" to refer to Hawaii's and the United States' shared jurisdiction over enclave lands, as opposed to the fact that a plaintiff may bring a federal claim in state court.

general matter provide little analysis.[9]  Cases from other jurisdictions, however, are

more instructive, and provide clear guidance on applying the federal question

framework where concurrent enclave jurisdiction exists.

Where there is exclusive federal enclave jurisdiction, courts have

generally determined that the state law that would otherwise govern the land

becomes assimilated as federal law, resulting in the federal question jurisdiction.

For example, *Mater v. Holley*, 200 F.2d 123 (5th Cir. 1952) -- which the Ninth

Circuit has cited with approval in both *Durham* and *Willis* -- addressed whether

federal jurisdiction exists for negligence claims stemming from personal injuries

_____

[9]  Both *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006), and *Willis v. Craig*, 555 F.2d 724 (9th Cir. 1977) (per curiam), provide little discussion of the scope of enclave jurisdiction, whether based on exclusive or concurrent enclave jurisdiction.

*Durham* addressed whether a complaint asserting claims for asbestos exposure during service with the U.S. Air Force provided a basis for federal subject matter jurisdiction and therefore started the clock for the defendant to remove the action to federal court.  In determining that the complaint provided a basis for federal subject matter jurisdiction, *Durham* stated in summary fashion that "[f]ederal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'"  443 F.3d at 1250.  *Durham* provides no discussion as to the extent of the federal enclave jurisdiction at issue (whether exclusive or concurrent).

*Willis*, a personal injury action brought by a civilian employee of the U.S. Navy, remanded to the district court for further findings as to whether the tort at issue occurred on a federal enclave, which would provide a basis for subject matter jurisdiction.  555 F.2d at 726. *Willis* states, in a footnote, that "[w]e have no quarrel with the propriety of enclave jurisdiction in this case (if the facts support it), even though the state courts may have concurrent jurisdiction."  *Id.* at 726 n.4.  This statement provides little guidance -- the statement appears to be dicta, the analysis is in any event cursory, and appears to be using the term "concurrent jurisdiction" to refer to concurrent jurisdiction between federal and state court, not concurrent enclave jurisdiction.

Further, both *Durham* and *Willis* cited with approval *Mater v. Holley*, 200 F.2d 123 (5th Cir. 1952), an exclusive jurisdiction case, suggesting that they were not considering the broad concurrent jurisdiction at issue in this action.

suffered within the boundaries of Fort McPherson, over which the federal

government had exclusive sovereignty subject to the State of Georgia's limited

concurrent jurisdiction for service of process and regulation of public utilities. *Id.*

at 123. *Mater* determined that these claims arose under federal law for purposes of

28 U.S.C. § 1331 because when the legislative power over Fort McPherson was

transferred from Georgia to the United States, the then-existing laws of Georgia

"for the protection of private rights, so far as consistent with the laws of the

[United States], continue[d] in force until abrogated or altered by the [United

States]." *Id.* at 124.

Given the United States' exclusive enclave jurisdiction (other than for

service of process and regulation of public utilities), these carried-over laws were

no longer those of Georgia, but rather those of the United States:

> [A]ny law existing in territory over which the United
> States has 'exclusive' sovereignty must derive its
> authority and force from the United States and is for that
> reason federal law, even though having its origin in the
> law of the state within the exterior boundaries of which
> the federal area is situate. When, therefore, this area was
> ceded by Georgia to the United States, Georgia law as
> such, and by virtue of Georgia sovereignty ceased to
> exist, but remained operative as federal law by virtue of
> the sovereignty of the United States.

*Id.* This judicially-created rule "assures that no area, however small, will be left

without laws regulating private rights." *Id. See also James Stewart & Co. v.*

*Sadrakula*, 309 U.S. 94, 100 (1940). And under this rule, where a claim arises on lands subject to federal exclusive enclave jurisdiction, such claim will almost always require resolution of either a federal law or a state law that has been assimilated into federal law. *See also Swords to Plowshares v. Kemp*, 423 F. Supp. 2d 1031, 1037 (N.D. Cal. 2005) (denying motion to remand unlawful detainer action which occurred on property that is an exclusive federal enclave because such claim was brought under assimilated federal law); *Kelly*, 25 F. Supp. 2d at 4 (explaining that where the United States purchases state land and the state transfers complete jurisdiction to the United States, "the state law at the time of cession becomes federal law"); *cf. Sadrakula*, 309 U.S. at 104-05 (holding that New York labor law remained in effect as federal law on lands ceded to the United States for a post office site until such time as Congress provided federal safety regulations in that area).

In comparison, where there is broad concurrent enclave jurisdiction, there is no concern that the enclave will be left without laws regulating private rights -- state law applies with no need to assimilate state law into federal law. *Community Housing Partnership v. Byrd*, 2013 WL 6087350 (N.D. Cal. Nov. 19, 2013), applied this principle in remanding a wrongful detainer action occurring on Treasure Island, in which California and the United States held concurrent enclave

jurisdiction.  *Id.* at *6.  Relying on the *Mater* line of cases, *Byrd* found that the question of federal subject matter jurisdiction boiled down to whether the defendant established that the action presented a federal question -- that is, whether a federal law creates a cause of action or the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law.  *Id.* at *5.

In light of the concurrent enclave jurisdiction, *Byrd* determined that the plaintiff was asserting a state-law claim and that the court lacked subject matter jurisdiction -- the action involved a "San Francisco-based housing organization bringing an unlawful detainer action, which is grounded entirely in California statute, against its former property manager."  *Id.* at *6.  Stated differently, federal law did not create the wrongful detainer claim, and this claim did not raise any substantial federal issue disputed between the parties.  As a result, *Byrd* concluded that "[n]either the claim nor the parties present a substantial question of federal law."  *Id.*; *cf. Pratt v. Kelly*, 585 F.2d 692, 697 (4th Cir. 1978) (determining lack of federal question jurisdiction over automobile accident on national park lands in which the state held concurrent jurisdiction); *Sylvane v. Whelan*, 506 F. Supp. 1355, 1361 (E.D.N.Y. 1981) (finding no federal question raised in challenge to nude bathing on national recreational area subject to concurrent jurisdiction because "once the state cedes concurrent jurisdiction (in this case, indeed,

18

reserving unto itself exclusive civil jurisdiction) the rationale for applying

'federalized' state law as the basis for § 1331 jurisdiction disappears" (citations

omitted)).

Applying *Byrd*, the court has little difficulty finding that Plaintiffs'

claims do not arise under federal law.  First, federal law does not create Plaintiffs'

breach of trust claim.  Rather, this claim is governed entirely by Hawaii law in light

of Hawaii's broad concurrent enclave jurisdiction over the PTA.  Specifically, the

Admission Act granted Hawaii broad concurrent enclave jurisdiction by providing

that Hawaii may "exercis[e] over or upon such lands, concurrently with the United

States, *any jurisdiction whatsoever* which it would have in the absence of such

reservation of authority and which is consistent with the laws hereafter enacted by

the Congress pursuant to such reservation of authority."  Admission Act, § 16(b),

Pub. L. No. 86-3, 73 Stat. 11-12 (emphasis added).  Upon admission to the Union,

Hawaii adopted its own laws -- which plainly apply to Plaintiffs' breach of trust

claim[10] -- and Defendants offer no argument suggesting that Hawaii's laws on trust

obligations are inconsistent with any federal law and/or that Plaintiffs' breach of

trust claim is otherwise governed by federal common law (indeed, Defendants did

---

[10]  *See* Hawaii Revised Statutes ("HRS") § 1-1 (adopting common law of England); *Pele Def. Fund v. Paty*, 73 Haw. 578, 837 P.2d 1247 (1992) (recognizing breach of trust claim under Hawaii law); *see also Kalaka Nui, Inc.*, 2009 WL 1227892, at *5-6 (determining that state law was applicable to contract dispute on Hickam Air Force Base).

not address the effect of concurrent jurisdiction in its Opposition to Plaintiffs' Motion to Remand or even file a Response to Plaintiffs' Objections). In short, where state law is fully capable of regulating rights between parties, there is no assimilated law and thus no federal law giving rise to subject matter jurisdiction.

Nor have Defendants established that this action falls within the "special and small category" of cases in which a state-law claim necessarily raises a federal issue. *See Gunn*, 133 S. Ct. at 1064. Defendants, who have the burden of establishing this court's jurisdiction, fail to identify *any* federal issue that is (1) necessarily raised by this action, (2) actually disputed by the parties, (3) substantial, *and* (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Id.* at 1065. Indeed, Defendants did not address these issues in any manner whatsoever -- they did not address federal question jurisdiction in light of the concurrent enclave jurisdiction before Magistrate Judge Puglisi, and filed no Response to Plaintiffs' Objections.

And on the record presented, the court has little difficulty finding that this action raises no substantial federal issues actually disputed by the parties, and for which the federal court could resolve without disrupting Hawaii's broad concurrent jurisdiction granted by Congress. Rather, at issue is a purely state-law breach of trust claim raising numerous questions of fact and substantial questions

of Hawaii law regarding the State's obligations as to ceded lands.  *See Bender v. Jordan*, 623 F.3d 1128, 1131 (D.C. Cir. 2010) (explaining that "[f]ederal jurisdiction is favored in cases that present 'a nearly pure issue of law . . . that could be settled once and for all and thereafter would govern numerous . . . cases,'" and is "disfavored for cases that are 'fact-bound and situation-specific' or which involve substantial questions of state as well as federal law" (quoting *Empire*, 547 U.S. at 700, 701)).  Defendants have therefore failed to carry their burden of establishing a basis for federal subject matter jurisdiction and removal of this case.

In making this determination, the court recognizes that *Federico v. Lincoln Military Housing*, 901 F. Supp. 2d 654 (E.D. Va. 2012), applied a different analytical approach than followed by this court and *Byrd*, and that both the July 22 F&R and Plaintiffs follow this approach in their analyses of subject matter jurisdiction.  In particular, *Federico* rejected the traditional "substantial question of federal law" inquiry in determining subject matter jurisdiction, and instead held that "there should be a federal forum in which to litigate controversies arising on federal enclaves -- even when there is concurrent jurisdiction, the complaint involves state law claims, and a state forum also exists -- in order to prevent state judicial interference with 'matters likely to involve substantial federal interests.'"

*Id.* at 672 (citing *Akin v. Big Three Indus., Inc.*, 851 F. Supp. 819, 822 (E.D. Tex. 1994) (exercising federal enclave jurisdiction over toxic tort case on Air Force base)). Applying this test, *Federico* found that it had subject matter jurisdiction over tort claims for exposure to mold in military housing run by a federal public-private venture -- there was "no question" that the facts and the parties presented "unique and significant" federal interests where "almost everything in this case implicates the United States Navy in one form or another." *Id.* at 673.

The court rejects *Federico* because it fails to follow the federal question inquiry and impermissibly replaces it with a subjective analysis of what may or may not be a "federal interest." The test is not whether a case implicates, in a generic sense, a particular federal interest, but rather whether the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Gunn*, 133 S. Ct. at 1065. *Federico* therefore finds no support in federal question jurisdiction jurisprudence.[11]

Finally, the court recognizes that the law of concurrent enclave jurisdiction presents a difficult issue. But Defendants have the burden of establishing jurisdiction, and they offered no argument whatsoever regarding the

---

[11] That the United States may have an "overwhelming interest" in the subject of a particular action does not by itself warrant turning a run-of-the-mill state law claim into a federal action. *Empire*, 547 U.S. at 701.

difficult issue of federal question jurisdiction where concurrent enclave jurisdiction exists. Where the court must construe the removal statute *strictly* against removal, with *any* doubt resolved against removability, s*ee Hawaii ex rel. Louie*, 2014 WL 3765697, at *4, there is simply too much doubt in this case.

## V. <u>CONCLUSION</u>

Based on the above, the court (1) REJECTS the July 22, 2014 Findings and Recommendation to Deny Plaintiffs' Motion to Remand, Doc. No. 18; and (2) GRANTS Plaintiffs' Motion to Remand, Doc. No. 6. The Clerk of Court is directed to REMAND this action to the First Circuit Court of the State of Hawaii.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 22, 2014.



 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Ching et al. v. Aila et al.*, Civ. No. 14-00253 JMS-RLP, Order (1) Rejecting July 22, 2014 Findings and Recommendation to Deny Plaintiffs' Motion to Remand, Doc. No. 18; and (2) Granting Plaintiffs' Motion to Remand, Doc. No. 6